O’Neall J.
delivered the opinion of the Court.
In this case, the argument, especially of the able counsel for the defendant, has covered a wide range. The whole matter, however, depends upon the 1st ground. If it be true that the words of the will, the “old tract of land that I bought from Ab-ney,” are to be confined to the land covered by the Abney grant, and by the deed from Abney to the testator, then the Judge below was right in ruling, that the land in dispute did not pass by the will. But if those words are not so restricted, and the case is to be decided on all the facts proved, then unquestionably it was a question of fact for the jury, what land did the testator intend to devise by the words used ?
*11 I agree to the rule of Doe. dem. Chichester v. Oxenden, 3 Taunt. 147, 1 Jarm. on Wills, 350, that whenever the description in the will is satisfied according to the words used, you cannot go beyond, and add other estates on account of the testator being in the habit of including them in conversation, under a general common name. But here the question is, what is meant by the old tract of land that I bought of Abney? This must be resolved by extrinsic evidence, as is said in 1 Jarm. on Wills, 366. This extrinsic evidence is not confined to the grant or deed, but necessarily embraces every thing, which may inform the Court and jury what land the testator supposed he bought from Abney. In this very case, the bond for titles, executed by John Abney to Edward Coleman, ten years before the execution of the deed, was in evidence. According to its description, the land in dispute might be included; for towards the West it calls for Matthew Wells’ land as a boundary. It is true, exclude the land in dispute, and still Matthew Wells’ is a boundaiy; include it, and the same thing is the case. Construing the'words most strongly against the grantor, it might well cover the land, and then from it, as opposed to the deed, it might well be said, although Abney did not convey the land, yet Coleman bought it from him. This too would correspond with Coleman’s statement to Chapman, the surveyor, that he bought to the white oak corner, but on Chapman assuring him that the papers would not cover it, he said it might be so, for Abney had told him there was a piece of vacant land, but he had his quantity without it. This, I suppose, might be explained in this way: Abney sold the whole land; but finding before he made titles, that this land was vacant, told Coleman there was a piece of vacant land, but he had his quantity without it, and then executed his title excluding it. The facts too, that the testator’s son-in-law, by his direction, as far back as 1803, cleared on the land in dispute; that the field thus cleared was cultivated by the testator until it was worn out, are other circumstances in aid of the view, that the testator regarded this land as part of his old place, which he bought of Abney. To this must be added the further fact, that when he took up the land as vacant, he made no line between it, and the rest of the land; and that *12 he included all in one plat. When all these facts are put together, they must be compared with the facts, that neither the grant to Abney nor his deed to Coleman, includes the land; and then the question presents itself, what land did the testator, at the time he made his will, believe he bought from Abney, and which he intended to designate as his old place bought from Abney? Who is to answer that question? It depends upon facts properly in evidence, and of course the jury under the advice of the Court, must answer it.
The motion for new trial is granted.
Richardson J., and Frost J., concurred.